J. S37040/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                         :  PENNSYLVANIA
               v.  :

RAHEEM B. FORD,  :  No. 2255 EDA 2018
                                 :
             Appellant  :

Appeal from the Judgment of Sentence Entered July 18, 2018,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0005923-2017

BEFORE:  BOWES, J., KUNSELMAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:  **FILED SEPTEMBER 23, 2019**

Raheem B. Ford appeals from the July 18, 2018 judgment of sentence entered by the Court of Common Pleas of Philadelphia County following his conviction of robbery, conspiracy to commit robbery, theft by unlawful taking, and burglary.[1]  After careful review, we affirm.

The trial court set forth the following factual history:

> The complainant, Sharnell Davis, testified that on June 21, 2017, she was the victim of a robbery and burglary in her home at 6158 Windsor Street, Philadelphia, Pennsylvania[,] where she lived with her three small children, ages four (4), three (3), and five (5) months.  Her father had just passed away in June 2017 and to avoid loneliness she asked her cousin Layla Muhammed to live with her following his death.  At the time, Layla Muhammed was dating [appellant], and the complainant said as a result she knew [him] for the past two and a half (2½) years.

---

[1] 18 Pa.C.S.A. §§ 3701(a), 903(a), 3921(a), and 3502(a), respectively.

She noted that she met [appellant] around five times previously and that he had stayed at her house on two prior occasions. The last time she saw [appellant] was the Sunday before the date of the incident when she dropped her cousin Layla off at his house on 10th [S]treet. Layla subsequently returned to the complainant's house for the next three days.

On the date in question[], Layla was picked up by [appellant] at 5 am at the complainant's house. The complainant explained that she went shopping with her friend Dior Bryant, and that Layla called her throughout the day. She noted that when they returned to her house, Layla called again. Thereafter, the complainant was sitting at her computer between the dining room and the living room with her infant child in her arms while her friend, Ms. Bryant, was on the couch in the living room. Almost a half-hour later after receiving the last call from Layla, two intruders entered the complainant's house. The complainant explained that her front door was unlocked because her children were playing on the front steps before she told them to come in after it began to rain.

A masked intruder immediately went up the stairs while the second unmasked intruder held the complainant, her children, and Ms. Bryant in the living room at gun point. The unmasked intruder had a cross tattoo on his face and another tattoo on his neck; he told the complainant to "Go get that shit" and to give her son to Ms. Bryant while pointing the gun at her and her infant son. The complainant went upstairs to her room and retrieved a bag of $400 in money and coins that had belonged to her father. The complainant testified that she recognized [appellant] as the masked intruder when they made eye contact in the upstairs hallway as he exited her deceased father's room. He was wearing a "homemade ski mask" with large eye holes and a mouth hole cut out. When they returned downstairs, the unmasked intruder told the complainant to get on the floor and [appellant] suggested that they put them in the basement. The group was told to stay in the basement and did for what seemed like 15 to

20 minutes. Hearing no more noise upstairs, they climbed out a window and went to the home of the complainant's sister to call the police.

. . . .

Following the robbery, the complainant was distraught and returned to her house to meet law enforcement. Back at her house, she informed police of [appellant's] identity and was subsequently brought to Southwest Detectives. The complainant identified [appellant] as the masked intruder and told police where she thought he lived based on where she dropped off her cousin in the past. The complainant explained that in an attempt to identify the other intruder she had her son's stepmother "screenshot" [appellant's] Instagram page. She claimed to have discovered a picture of [appellant] with the other intruder that she emailed to detectives on July 12, 2017. On cross-examination, the complainant explained that she had seen [appellant] on prior occasions but that he was not allowed back to her house because he had brought a gun there in 2013. The complainant stated, however, that she and [appellant] had a "cordial relationship."

. . . .

Detective Matthew Carey testified that he was the assigned detective on the case and he interviewed the complainant at Southwest Detectives. Detective Carey testified that the complainant told him that [appellant] committed the crime and that she identified where he lived on Google [M]aps as 801 North Warnock Street. Detective Carey stated that the complainant reported that around $400 in change and marijuana had been taken. As a result, a search warrant was prepared and executed at [appellant's] home. Proof of residency was found along with numerous live .45 caliber rounds in the back bedroom of the house. Detective Carey testified that later on in the investigation the complainant provided him with a picture of [appellant] with the

second intruder, Rashan Roberts, who was armed and unmasked. The complainant identified Rashan Roberts in a photo array and a search warrant was prepared and executed for his home at 911 North Marvine Street, just two blocks away from [appellant's] address. A black mask was found and Mr. Roberts was arrested. On cross-examination, Detective Carey stated that he was not aware of any cameras that were located in the area of the robbery. Police never recovered a gun, marijuana, or clothing matching the descriptions of the intruders.

Trial court opinion, 2/15/19 at 2-6 (citations to the record omitted).

The Commonwealth charged appellant with, *inter alia*, robbery, conspiracy to commit robbery, theft by unlawful taking, and burglary. Appellant filed a pretrial motion *in limine* in which he sought to suppress evidence of bullets found in his house. The trial court denied appellant's motion. A jury convicted appellant of the aforementioned crimes on March 1, 2018. On July 18, 2018, the trial court sentenced appellant to an aggregate of 2½-5 years' imprisonment.

Appellant filed a timely notice of appeal to this court on July 24, 2018. The trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and appellant timely complied. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

1. Did not the trial court err and abuse its discretion by permitting testimony of the complainant's identification of appellant from a photograph posted on Instagram and admitting that Instagram photograph into evidence, in violation of appellant's state and federal

constitutional rights, where the Instagram post was not properly authenticated pursuant to Pa.R.E. 901 inasmuch as the Commonwealth presented no direct or circumstantial evidence regarding to whom the Instagram account belonged?

2.   Did not the trial court err and abuse its discretion by denying appellant's motion *in limine* to preclude introduction of bullets found in appellant's home, in violation of appellant's state and federal constitutional rights, where introduction of such evidence was irrelevant and any probative value was outweighed by a danger of unfair prejudice?

3.   Did not the trial court err and abuse its discretion in denying appellant's request for a mistrial where the Commonwealth's statement to the jury during summation that it should "have the courage to do the right thing and find the defendant guilty," constituted expression of an improper personal opinion regarding appellant's guilt in violation of appellant's state and federal constitutional rights?

Appellant's brief at 4-5.

In his first issue on appeal, appellant argues that the trial court abused its discretion when it admitted a photograph posted on Instagram into evidence, which the complainant used to identify appellant's accomplice, Rashan Roberts.[2]  (*Id.* at 13.)  Appellant further avers that the photograph was not authenticated and that the Commonwealth did not disclose who posted the photograph, nor did it disclose the date of the photograph.  (*Id.*)

---

[2] The Commonwealth did not try appellant and Mr. Roberts together.

Appellant further contends that he was unfairly prejudiced because the photograph established that he knew Mr. Roberts. (*Id.* at 18.)

Appellate review of the admission of evidence before the trial court is governed by the following standard of review:

> It is firmly established, "questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and [a reviewing court] will not reverse the court's decision on such a question absent clear abuse of discretion."

*Commonwealth v. Baker*, 963 A.2d 495, 503-504 (citations omitted). Additionally,

> [i]t is not sufficient to persuade the appellate court that it might have reached a different conclusion[;] it is necessary to show an actual abuse of the discretionary power. An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion [that] overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Christine*, [] 125 A.3d 394, 397 ([Pa.] 2015) (citations omitted).

*Commonwealth v. Sweitzer*, 177 A.3d 253, 260-261 (Pa.Super. 2017).

In his argument, appellant relies upon our decision in *Commonwealth v. Mangel*, 181 A.3d 1154 (Pa.Super. 2018), which states that because the Commonwealth did not present any direct or circumstantial evidence linking the defendant to certain Facebook chat messages and photographs, the trial

court did not abuse its discretion when it denied the Commonwealth's motion *in limine* to introduce evidence obtained from the defendant's purported Facebook page. (Appellant's brief at 14-15, citing *Mangel*, 181 A.3d at 1164.)

In *Mangel*, the Commonwealth sought to introduce screenshots from a Facebook page supposedly belonging to the defendant. *Mangel*, 181 A.3d at 1155. Specifically, the Commonwealth wanted to introduce screenshots consisting of undated online and mobile chat messages and a screenshot of a photograph of what appeared to be bloody hands that someone else purportedly posted to the defendant's Facebook page. *Id.* This court held that in order for such evidence to be admissible, it must be authenticated using more than mere confirmation that the Facebook page belonged to a particular person. *Id.* at 1161, citing *Commonwealth v. Koch*, 39 A.3d 996, 1105 (Pa.Super. 2011), *affirmed by an equally divided court*, 106 A.3d 705 (Pa. 2014).

Generally, "[w]hen the evidence in question is a photograph, it may be authenticated by testimony from a person who has sufficient knowledge that the photograph fairly and accurately reflects what the proponent is purporting that photograph to reflect." *Commonwealth v. Loughnane*, 128 A.3d 806, 814 (Pa.Super. 2015), *rev'd. on other grounds*, 173 A.3d 733 (Pa. 2017), citing *Nyce v. Muffley*, 119 A.2d 530, 532 (Pa. 1956).

Here, the Commonwealth used the photograph at issue only for identification purposes. In its brief, the Commonwealth argues that there was

"never any dispute as to the actual identity of the individuals in the photograph." (Commonwealth's brief at 12.) Indeed, the complainant testified that she identified Mr. Roberts after seeing a photograph of both Mr. Roberts and appellant on appellant's Instagram page. (Notes of testimony, 2/27/18 at 85-87.) Accordingly, we find that through the complainant's testimony, the Commonwealth was able to authenticate the photograph and that the trial court did not abuse its discretion when it admitted the photograph into evidence.

Appellant next contends that the trial court erred and abused its discretion when it denied his motion *in limine* in which appellant sought to preclude the introduction of bullets found in his grandmother's house where he was living. (Appellant's brief at 19.) When reviewing the denial of a motion *in limine*, we apply the evidentiary abuse of discretion standard of review. *Commonwealth v. Schley*, 136 A.3d 511, 514 (Pa.Super. 2016), citing *Commonwealth v. Orie*, 88 A.3d 983, 1022 (Pa.Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014).

Here, appellant specifically contends that evidence of the bullets recovered in his grandmother's house was irrelevant or, in the alternative, was prejudicial because its inclusion could "lead[] to the inference that appellant has access to firearms and ammunition where he was not charged with violations of the Uniform Firearms Act and no firearm was recovered." (Appellant's brief at 22.)

> Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

*Commonwealth v. Antidormi*, 84 A.3d 736, 749 (Pa.Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014), quoting *Commonwealth v. Weakley*, 972 A.2d 1182, 1188 (Pa.Super. 2009), *appeal denied*, 986 A.2d 150 (Pa. 2009).

Here, the trial court concluded that the bullets recovered from appellant's bedroom were relevant and were not unfairly prejudicial because of his participation in a gunpoint robbery and burglary. (*See* trial court opinion, 2/15/19 at 10.) As noted by the Commonwealth, our supreme court has held the following:

> A weapon not "specifically linked" to the crime is generally inadmissible; however, the fact "the accused had a weapon or implement suitable to the commission of the crime charged . . . is always a proper ingredient of the case for the prosecution. [*Commonwealth v.*] *Robinson*[, 721 A.2d 344,] 351 [(Pa. 1998)]. "Any uncertainty that the weapon is the actual weapon used in the crime goes to the weight of such evidence." *Commonwealth v. Williams*, [] 640 A.2d 1251, 1260 ([Pa.] 1994) (citing *Commonwealth v. Caccioletti*, [] 425 A.2d 387, 390 ([Pa.] 1981)). "The only burden on the prosecution is to lay a foundation that would justify an inference by the finder of fact of the likelihood that the weapon was used in the commission of the crime." [*Commonwealth v.*] *Lee*, [662 A.2d 645,] 652 [(Pa. 1995)] (citing *Commonwealth v. Thomas*, [] 561 A.2d 699, 707 ([Pa.] 1989) ("If a proper foundation is laid, the weapon is admissible where the

circumstances raise an inference of the likelihood that it was used.")).

***Christine***, 125 A.3d at 400.

Here, applying the ***Christine*** court's discussion of weapons to the ammunition seized in this case, we find that the trial court did not abuse its discretion due to the fact that appellant was alleged to have participated in a robbery and burglary in which firearms were brandished. Further, we find that the prejudice of introducing the presence of bullets in appellant's bedroom did not outweigh its probative value. Accordingly, the trial court did not abuse its discretion when it denied appellant's motion ***in limine***.

In his third and final issue, appellant argues that the trial court erred when it denied his request for a mistrial after the prosecutor implored the jury to have "the courage to do the right thing" during the Commonwealth's closing argument at trial. (Appellant's brief at 23.) Specifically, appellant contends that the remark was inflammatory, prejudicial, represented an expression of the prosecutor's improper personal opinion pertaining to appellant's guilt, and therefore, denied appellant a fair trial. (***Id.***)

When reviewing a trial court's denial of a motion for a mistrial, particularly in the context of a prosecutor's comments during closing argument, we are held to the following standard of review:

> Our standard of review for the denial of a motion for a mistrial is limited to assessing whether the trial court abused its discretion. ***Commonwealth v. Cash***, [] 137 A.3d 1262, [1273] (Pa. [] 2016). More specifically, this Court has provided the following

standards for reviewing a claim of prosecutorial misconduct in a closing statement:

> it is well settled that any challenged prosecutorial comment must not be viewed in isolation, but rather must be considered in the context in which it was offered. ***Commonwealth v. Correa***, [] 664 A.2d 607 ([Pa.Super.] 1995). Our review of a prosecutor's comment and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. ***Commonwealth v. Rios***, [] 721 A.2d 1049 ([Pa.] 1998). Thus, it is well settled that statements made by the prosecutor to the jury during closing argument will not form the basis for granting a new trial "unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." ***Commonwealth v. Fletcher***, [] 861 A.2d 898, 916 ([Pa.] 2004) (quotation and quotation marks omitted). The appellate courts have recognized that not every unwise remark by an attorney amounts to misconduct or warrants the grant of a new trial. ***Commonwealth v. Faulkner***, [] 595 A.2d 28 ([Pa.] 1991). Additionally, like the defense, the prosecution is accorded reasonable latitude, may employ oratorical flair in arguing its version of the case to the jury, and may advance arguments supported by the evidence or use inferences that can reasonably be derived therefrom. ***Commonwealth v. Carson***, [] 913 A.2d 220 ([Pa.] 2006); ***Commonwealth v. Holley***, 945 A.2d 241 (Pa.Super. 2008). Moreover, the prosecutor is permitted to fairly respond to points made in the

> defense's closing, and therefore, a proper examination of a prosecutor's comments in closing requires review of the arguments advanced by the defense in summation. ***Commonwealth v. Chmiel***, [] 889 A.2d 501 ([Pa.] 2005).
>
> ***Commonwealth v. Jaynes***, 135 A.3d 606, 615 (Pa.Super. 2016).

***Commonwealth v. Scott***, 146 A.3d 775, 778-779 (Pa.Super. 2016), ***appeal***

***denied***, 166 A.3d 1232 (Pa. 2017).

Here, appellant takes exception to the following from the

Commonwealth's closing argument to the jury:

> When you deliberate, I'd ask that you use your common sense. Common sense in a criminal case can be described as: The ability to see things as they really were and the courage to do the right thing based upon that.
>
> This young lady, Sharnell Davis, saw things as they really were on June 21st, 2017 and every time since then she's had the courage to do the right thing based upon that, even at the risk of ruining family relationships.
>
> I'd ask you likewise, to have the courage to do the right thing and find [appellant] guilty.

Notes of testimony, 2/28/18 at 104-105 (emphasis omitted).

Based upon our review of the record, we find that the Commonwealth

"'neither caused the jury to form a fixed bias or hostility towards appellant nor

did [it] ask the jury to send a message to the judicial system or . . .' the

community." ***Commonwealth v. Patton***, 985 A.2d 1283, 1287 (Pa. 2009),

quoting ***Commonwealth v. Hall***, 701 A.2d 190, 203 (Pa. 1997),

***cert. denied sub nom. Hall v. Pennsylvania***, 523 U.S. 1082 (1998). ***See also Commonwealth v. Ervin***, 766 A.2d 859, 865 (Pa.Super. 2000), ***appeal denied***, 793 A.2d 904 (Pa. 2002), ***cert. denied sub nom. Ervin v. Pennsylvania***, 536 U.S. 939 (2002) (finding that imploring the jury to have courage, when used in the context of speaking of the courage of witnesses at trial, was not an objectionable argument on the part of the prosecutor). Accordingly, the trial court did not abuse its discretion when it denied appellant's request for a mistrial for prosecutorial misconduct.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/19